## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER MICHAUD, | ) | |
| ANDREW LASICK, | ) | |
| TONY CASANOVA, and | ) | |
| FREDERICK SCHNACKENBERG III, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No. 2:12-cv-00353-NT |
| | ) | |
| MONRO MUFFLER BRAKE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION FOR CLASS/COLLECTIVE CERTIFICATION, PRELIMINARY APPROVAL OF SETTLEMENT, AUTHORIZATION TO SEND SETTLEMENT NOTICES, AND APPOINTMENT OF CLASS COUNSEL

Before the Court is the Plaintiffs' unopposed motion for class/collective certification, preliminary approval of the settlement of all claims at issue in this suit, authorization to send settlement notices, and appointment of class counsel (ECF No. 78). For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

Plaintiffs Christopher Michaud, Andrew Lasick, Tony Casanova, and Frederick Schnackenberg III (the "**Plaintiffs**") bring suit on behalf of themselves and all other similarly situated technicians and assistant store managers employed by Defendant Monro Muffler Brake, Inc. ("**Monro Muffler**"). The Complaint alleges that the Plaintiffs all worked at Monro Muffler establishments focused on tire sales

and services. Third Am. Compl. ("**Compl.**") ¶¶ 5-8 (ECF No. 67). The Plaintiffs were non-exempt employees paid on an hourly basis. Compl. ¶¶ 12, 20. The Complaint describes two general categories of claims.

First, the Plaintiffs allege that they earned additional compensation, called "spiffs," when they completed tire installations and alignments. Compl. ¶ 65. Monro Muffler reported these spiff payments on employees' pay stubs. Compl. ¶ 15. However, for overtime, Monro Muffler paid employees 1.5 times their respective *hourly* rates of pay, which did not include spiff payments. Compl. ¶¶ 15-17. The Complaint alleges that the practice of failing to account for spiff payments in calculating overtime pay violates the Fair Labor Standards Act (the "**FLSA**"), 29 U.S.C. §§ 207, 255, as well as state wage and hour laws in Maine, 26 M.R.S. § 664(3), Massachusetts, M.G.L. Ch. 151 § 1A, New Hampshire, N.H. Rev. Stat. § 279:21(VIII), and Vermont, 21 V.S. § 384(b) (the "**Spiff Claims**").

Next, Plaintiff Michaud alleges that Monro Muffler routinely required him and other assistant store managers to perform off-the-clock work during their half-hour lunch breaks and after the end of their shifts. Michaud contends that, on average, he worked through his lunch break one to two times per week, Compl. ¶ 26, and performed post-shift work three to four times per week for approximately fifteen to forty-five minutes each time. Compl. ¶ 33. The Complaint alleges that Monro Muffler's practice of requiring off-the-clock—and therefore uncompensated—work of its assistant store managers violates FLSA, 29 U.S.C. §§ 207, 255 and Maine wage and hour laws, 26 M.R.S. § 629(1), 664(3) (the "**ASM Claims**").

The Court is now called upon to resolve the Plaintiffs' unopposed motion for class/collective certification and preliminary approval of agreements settling the Spiff Claims and the ASM Claims, to authorize settlement notices, and to appoint class counsel. This motion has presented a series of procedural difficulties, as the Plaintiffs seek to certify several distinct—but at times overlapping—classes and collective actions in order to set the stage for finally resolving all claims in this action. Rather than having class and collective action certification briefed and decided in advance of settlement, the Plaintiffs ask the Court to take action on several distinct requests in one swoop, without the benefit of adversarial briefing.[1] After multiple unopposed briefs from the Plaintiffs and conferences of counsel, the Court has parsed out each distinct request and resolves the motion as described below.

## DISCUSSION

## I.    Certification

### A.    Rule 23 Class Actions

#### 1.    Legal Standard

A party seeking class certification must first demonstrate that all requirements of Federal Rule of Civil Procedure 23(a) are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). These requirements are:

---

[1]    Adding an additional layer of complexity, this matter is a so-called "hybrid" action, because it simultaneously brings collective action claims under the FLSA and class action claims under individual state wage and hour laws. *See generally Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 530 (9th Cir. 2013) (noting the "practical concern[s]" that may arise where FLSA's "opt-in" requirement and Rule 23's "opt-out" requirement proceed within the same action), *rev'd* 135 S. Ct. 513 (2014); *McCormick v. Festiva Dev. Grp.*, No. 09-365-P-S, 2010 WL 582218, at *8 & n.6 (D. Me. Feb. 11, 2010) (noting the "management difficulties" and "potential for confusion" for class/collective action members when opt-in and opt-out mechanisms proceed side-by-side).

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Next, the named plaintiff must show that the class is maintainable under one of the types of class actions described in Rule 23(b). *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2548. "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3)).

### 2. Application: Spiff & ASM Claims

The Rule 23 classes proposed for the Spiff Claims are state claim classes covering employees in Maine (the "**Maine Spiff Class**"), Massachusetts (the "**Massachusetts Spiff Class**"), New Hampshire (the "**New Hampshire Spiff Class**"), and Vermont (the "**Vermont Spiff Class**") (together, the "**State Claim Spiff Classes**").[2] The Rule 23 class proposed for the ASM Claims is a Maine state claim class covering employees in Maine (the "**Maine ASM Class**").[3] As discussed

---

[2]     The Spiff Claim settlement agreement defines the State Claim Spiff Classes as follows: "All persons who were employed by Defendant on an hourly basis at Tire Warehouse stores in the state of [Maine/Massachusetts/New Hampshire/Vermont], who worked overtime and received additional compensation." Am. Spiff Class/Collective Action Settlement Agreement & Release 5 (ECF No. 78-2). The State Claim Spiff Classes include employees who worked for Monro Muffler from October 4, 2009 to April 27, 2013. Revised Notice of Settlement-Spiff Claims 5 (ECF No. 84-1).

[3]     The ASM Claim settlement agreement defines the Maine ASM Class as follows: "All persons who were employed by Defendant on an hourly basis at Tire Warehouse stores as assistant store managers in the state of Maine and who do not opt out of the settlement as provided herein." ASM

below, the State Claim Spiff Classes and the Maine ASM Class meet the Rule 23(a) and (b)(3) requirements for class certification.

### a.     Rule 23(a) Requirements

The State Claim Spiff Classes and the Maine ASM Class meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy.

### i.     Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." " 'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Advertising Specialty Nat. Assoc. v. Federal Trade Commission*, 238 F.2d 108, 119 (1st Cir. 1956). The State Claim Spiff Classes include varying numbers of class members: Maine-103, New Hampshire-97, Massachusetts-44, and Vermont-23. The Maine ASM Class has 66 members. Second Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 17-18.

Rule 23(a)(1) does not mandate any strict numerical cut-off for class certification, but courts in this circuit have generally found that a class of 40 or more individuals satisfies the numerosity requirement. *See, e.g.*, *Coffin v. Bowater, Inc.*, 228 F.R.D. 397, 402 (D. Me. 2005). While the Vermont Spiff Class is made up of only 23 individuals, "[t]he numerosity requirement is more readily met where a class contains employees suing their present employer. This is because class members may

_____

Class/Collective Action Settlement Agreement & Release 6-7 (ECF No. 78-5). The Maine ASM Class includes employees who worked for Monro Muffler from January 25, 2010 to February 15, 2014. Revised Notice of Settlement-ASM Claims 5 (ECF No. 84).

be unwilling to sue their employer out of fear of retaliation." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Ca. 2006); *accord Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). In addition, adjudicating the Vermont spiff claims as a class action would promote judicial economy by avoiding the potential for a series of highly similar individual actions. *See* William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2014). The numerosity requirement has been met for all four State Claim Spiff Classes and the Maine ASM Class.

### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." In other words, the class members' "claims must depend upon a common contention." *Dukes*, 131 S. Ct. at 2551. The Supreme Court has explained that the "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

With respect to the Spiff Claims, the Plaintiffs have established the following common contentions: (1) Monro Muffler failed to account for spiff payments in its overtime calculations; and (2) that failure violates state overtime laws in Maine, Massachusetts, New Hampshire, and Vermont. The resolution of either of these common contentions would resolve a central issue in each individual spiff claim. The Plaintiffs have satisfied the commonality requirement for the State Claim Spiff Classes.

With respect to the ASM Claims, Plaintiff Michaud alleges that in his role as an assistant store manager, he routinely worked through his daily half-hour lunch break, but that Monro Muffler had a policy and practice of automatically deducting thirty minutes of pay per shift without determining if he had actually taken a break. Plaintiff Michaud further claims that Monro Muffler routinely required him to perform work after clocking out. Plaintiff Michaud alleges that similarly situated assistant store managers were also required to work over lunch and after hours without compensation. Compl. ¶ 34. The common contentions in the ASM context include: (1) Monro Muffler automatically deducted time for lunch breaks without making sure that assistant store managers actually took breaks from work; and (2) Monro Muffler required assistant store managers to perform uncompensated post-shift duties. As above, the resolution of either of these common contentions would resolve a central issue in each individual ASM claim. The Plaintiffs have satisfied the commonality requirement for the Maine ASM Class.

### iii.    Typicality

Rule 23(a)(3) requires "that the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality is satisfied when the representative plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008).

The named plaintiff for each State Claim Spiff Class alleges that he was injured by Monro Muffler's practice of failing to account for spiff payments in

calculating overtime pay, in violation of either Maine, Massachusetts, New Hampshire, or Vermont law. The proposed State Claim Spiff Classes include hourly employees in each state who worked overtime and received spiff payments. Thus, each named plaintiff's injury arises from the same course of conduct as the injuries of each proposed class member, and is based on the same legal theory. The Plaintiffs have established typicality with respect to the State Claim Spiff Classes.

Plaintiff Michaud alleges that in his role as an assistant store manager, he was injured by Monro Muffler's practice of failing to compensate him for work performed during lunch periods and after clocking out at the end of his shift, in violation of Maine overtime law. The proposed Maine ASM Class includes assistant store managers employed by Monro Muffler in Maine. The Complaint alleges that Plaintiff Michaud was personally aware of other assistant store managers who regularly worked through lunch breaks. Compl. ¶ 27. Further, Plaintiff Michaud asserts that assistant store managers were required to perform discrete tasks that could only be completed once all store employees had clocked out for the day and computer operations had been shut down. Compl. ¶ 31. Accordingly, the named plaintiff's injuries arises from the same course of conduct as the injuries of each of the proposed class members, and are based on the same legal theory. Plaintiff Michaud has established typicality with respect to the Maine ASM Class.

### iv. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to

represent," and "factors in competency and conflicts of class counsel." *Amchem Prods., Inc.*, 521 U.S. at 625, 626 n.20.

Here, the interests of the named plaintiffs align with the members of the classes they seek to represent. There is no evidence of adequacy-defeating conflicts of interest, such as differences in the type of relief sought, a theory of law or fact that benefits some class members, but harms others, or a scenario where some class members benefit from the defendant's conduct. *See* Rubenstein, *supra*, § 3:58. The adequacy requirement is met for the State Claim Spiff Classes and the Maine ASM Class.

### b. Rule 23(b)(3) Requirements

As discussed above, once a plaintiff has established the Rule 23(a) prerequisites, the Court must also find that common questions predominate over any individual questions, and that handling the matter as a class action is superior to other methods of resolving the controversy. Fed. R. Civ. P. 23(b)(3). This analysis includes consideration of

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).[4]

---

[4] The Court does not examine the Rule 23(b)(3)(D) factor here because these are settlement classes and there are no trial management issues to consider. *See Amchem Prods.*, 521 U.S. at 620.

Here, with respect to the State Claim Spiff Classes, common questions predominate because all class members' claims arise out of the same compensation practice—the exclusion of spiff payments in calculating overtime pay, and implicate the same law—the overtime provisions in either Maine, Massachusetts, New Hampshire, or Vermont. Damage awards will vary among individual class members depending on the number of spiffs performed and the amount of overtime worked, but these individualized factual determinations are not predominance-defeating, particularly where they are easily resolved with the Defendant's payroll records. *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim."); Second Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 5 (ECF No. 78) (explaining that the parties consulted the Defendant's payroll records to determine actual damages for the Spiff Claims). The issues here are amenable to general, class-wide resolution.

With respect to the state law ASM Claims, common questions likewise predominate because all class members' claims relate to the practices of automatically deducting lunch break time regardless of whether the assistant store manager actually took a break and requiring assistant store managers to perform discrete, post-shift tasks. The Plaintiffs contend that these practices led to uncompensated off-the-clock work in violation of Maine wage laws 26 M.R.S. § 629(1)

and 664(3). There are, however, also individualized factual issues relevant to resolving the ASM Claims. For example, while Plaintiff Michaud alleges that he typically worked through his lunch break one to two times per week, Compl. ¶ 26, and performed post-shift work three to four times per week for approximately fifteen to forty-five minutes each time, Compl. ¶ 33, other assistant store managers may have spent more or less time performing off-the-clock work. However, individualized damage calculations do not generally thwart Rule 23(b)(3) class certification. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008) ("Predominance is not defeated by individual damage questions as long as liability is still subject to common proof."). Overall, the ASM claims are also amendable to general, class-wide resolution.

A class action is also a superior method for adjudicating both the state law Spiff and ASM Claims because it will resolve the claims at issue in a single, consolidated proceeding. Requiring multiple, near-identical suits would create an unnecessary burden for class members and the courts. It makes sense to concentrate this litigation in this forum, as this Court is already familiar with the underlying facts and theories of the case. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). The Court is not aware of any pending individual litigation by any member of the proposed classes, nor has there been any indication that individual class members have an interest in bringing separate actions. Many class members will only be entitled to small sums, making it less likely that they would

pursue claims on an individual basis. The Plaintiffs have satisfied the predominance and superiority requirements in Rule 23(b)(3).

### 3. Appointment of Class Counsel

Rule 23(g) directs courts to appoint class counsel when certifying a class. Courts must consider the following in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition, "[c]lass counsel must fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(4), and the Court may consider any other matter pertinent to that determination. Fed. R. Civ. P. 23(g)(1)(B).

The Plaintiffs do not mention Rule 23(g) in their brief, but have attached a declaration with information on the law firm Nichols Kaster, PLLP and partner Matthew H. Morgan to their motion. *See* July 24, 2014 Decl. of Matthew H. Morgan ("**Morgan Decl.**") (ECF No. 78-1). Nichols Kaster, PLLP has a dedicated wage and hour division and attorneys at the firm have practiced employment law for over 25 years. Morgan Decl. ¶ 9. Morgan himself has "tried many cases and [has] extensive experience litigating and settling class and collective actions and wage and hour claims." Morgan Decl. ¶ 10. The Plaintiffs' brief also reports that proposed local class counsel Donald F. Fontaine has more than 35 years of experience in labor and employment actions and lists two cases as examples. *See* Second Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 20 (ECF

No. 78). The Plaintiffs have satisfied the Court that proposed class counsel has sufficient experience to represent them.

With respect to work performed on this litigation, proposed class counsel has investigated the work performed by technicians and assistant store managers and the manner in which Monro Muffler compensated them. Morgan Decl. ¶ 2. Proposed class counsel interviewed the named Plaintiffs and analyzed state and federal laws applicable to their claims. Morgan Decl. ¶¶ 3, 4. The Plaintiffs' brief in support of preliminary settlement approval references "informal and formal discovery," including depositions. Second Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 7, 12.

Proposed class counsel has demonstrated knowledge of the FLSA and state wage and hour law in connection with their briefing and participation in conferences with the Court. Proposed class counsel has already committed resources to representing the class through filings with this Court, engagement in discovery, and participation in settlement negotiations. Proposed class counsel will continue to commit resources to representing the class through the dissemination of notice to potential class/collective members, appearance at the fairness hearing, and execution of settlement administration. The Court does not perceive any conflicts that would prevent proposed class counsel from fairly and adequately representing the interests of the various classes/collectives.

The Court finds it appropriate to appoint Matthew H. Morgan of Nichols Kaster, PLLP and Donald F. Fontaine of the Law Office of Donald F. Fontaine as class counsel.

### B.     FLSA Collective Action

#### 1.     Legal Standard

Employees seeking certification of a collective action under 29 U.S.C. § 216(b) must demonstrate that they are "similarly situated." In general, employees are "similarly situated" when they "have similar (not identical) job duties and pay provisions, and are 'victims of a common policy or plan that violated the law.' " *Prescott v. Prudential Ins. Co.*, 729 F.Supp.2d 357, 364 (D. Me. 2010) (internal citations omitted).

Courts in the First Circuit typically employ a "two tier" approach to FLSA collective action certification. *See, e.g. Johnson v. VCG Holding Corp.*, 802 F.Supp.2d 227, 233 (D. Me. 2011). First, a court determines whether notice should be given to potential collective action members. *Id.* at 233-34 (internal citation omitted). This first stage usually takes place early in a case, before substantial discovery, based on the pleadings and any affidavits. *Id.* at 234. A plaintiff must simply demonstrate "a reasonable basis for [her] claim that there are other similarly situated employees." *Prescott*, 729 F.Supp.2d at 364 (internal quotations and citations omitted). The second stage typically takes place after the close of discovery, when an employer moves to decertify the collective action. *Id.* "Factors relevant to the stage-two determination include: factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the

degree of fairness and procedural impact of certifying the action as a collective action." *Id.* at 364-65 (internal quotations and citations omitted).

### 2. Application: Spiff Claims[5]

In addition to the State Claim Spiff Classes, there is also an overarching FLSA Spiff Claim collective consisting of hourly Monro Muffler employees in Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont who earned spiffs, but did not have that additional compensation accounted for in their overtime pay (the "**FLSA Spiff Collective**").[6] In order to conditionally certify the FLSA Spiff Collective, the Court must find that these employees are "similarly situated." 29 U.S.C. § 216(b). Procedurally, the Court evaluates the Plaintiffs' request for collective action certification under the initial, pre-notice stage.[7] Accordingly, the Plaintiffs must only make a "modest factual showing" that, with similar but not necessarily

---

[5]     A FLSA ASM Claim collective (the "**FLSA ASM Collective**"), defined as "all hourly-paid assistant store managers working at the defendant's Tire Warehouse locations within three years before the date of entry of this order (May 8, 2013)," has already been conditionally certified. Order on Conditional Collective Action Certification, Court Authorized Judicial Notice, and Discovery (ECF No. 37). The parties, however, have proposed that the FLSA ASM Collective include assistant store managers who worked for Monro Muffler from January 25, 2010 to February 15, 2014. Revised Notice of Settlement-ASM Claims 5. The Court adopts the parties' proposed time frame for the FLSA ASM Collective.

[6]     The Spiff Claim settlement agreement defines the FLSA Spiff Collective as follows: "All hourly-paid employees who worked for Monro Muffler Brake, Inc. at Tire Warehouse stores in Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont who did not have any and all additional compensation included in their overtime pay calculation." Am. Spiff Class/Collective Action Settlement Agreement & Release 5. The FLSA Spiff Collective includes employees who worked for Monro Muffler from October 4, 2009 to April 27, 2013. Revised Notice of Settlement-Spiff Claims 5.

[7]     Given that this motion for collective action certification is unopposed and arrives in connection with settlement efforts, the Court does not expect to undertake "tier two" collective action analysis in connection with a motion to decertify from Monro Muffler.

identical jobs, potential collective action members suffered from a common unlawful policy or plan. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006).

Here, the Plaintiffs are technicians and assistant store managers in locations that focus primarily on tire sales and services. Compl. ¶¶ 5-8. The proposed collective action does not explicitly limit membership by job title, but instead includes any non-exempt hourly employees who earned spiff payments, but did not have those payments included in their overtime pay calculations. The Plaintiffs have identified 278 potential collective action members. *See* Spiff Allocation Sheet (ECF No. 78-3). The Complaint alleges that potential opt-in members of the Spiff Collective are "similarly situated" to Plaintiff Michaud because "[t]hey all hold or have held the same job position[8] and had or have had substantially similar job requirements and pay provisions." Compl. ¶ 41. The Complaint further alleges that potential opt-in members "are or were subject to the same common practices, policies, and plans that permit(ted) them to work for less than the correct overtime rate." Compl. ¶ 41. There is a reasonable basis for Plaintiff Michaud's claim that there are other similarly situated employees. As such, the FLSA Spiff Collective is conditionally certified.

## II.    Proposed Settlement

In addition to their requests for class/collective certification, the Plaintiffs have also asked the Court to "preliminarily" approve settlement agreements resolving the Spiff Claims and the ASM Claims.

---

[8]     The Complaint alleges that Monro Muffler first employed Plaintiff Michaud as a technician, and later as an assistant store manager. Compl. ¶ 5.

## A. Legal Standard

### 1. Rule 23

Under Federal Rule of Civil Procedure 23(e), the following procedural framework applies to the approval of a proposed settlement:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

Court approval of a Rule 23 class action settlement generally proceeds in two stages. *Manual for Complex Litigation* (Fourth) § 21.632 (2011). First, counsel submits the terms of the proposed settlement, and the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and directs notice to class members on the certification, proposed settlement, and date of the final fairness hearing. *Id.* At this initial stage, the court's role is limited to deciding "whether the proposed settlement appears to fall within the range of possible final approval." *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2011 WL 3740488, at *4 (D.R.I. Aug. 24, 2011). However, Judge Hornby has observed that despite the *Complex Litigation Manual*'s adoption of the term, Rule 23 does not itself

17

provide for "preliminary approval" of class action settlements. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55-56 (D. Me. 2006). In his view, "it makes sense for a judge to say that a particular settlement has no chance of approval" before ordering class notice, but any determination as to a settlement's fairness, reasonableness, and adequacy should be reserved for the fairness hearing. *Id.* In accordance with Judge Hornby's observations and the text of Rule 23(e), the Court will reserve its determination as to the proposed settlement's fairness, reasonableness, and adequacy until after the fairness hearing.

Following notice to the class, the court holds a fairness hearing where the settlement proponents must demonstrate that the proposed settlement is fair, reasonable, and adequate. *Manual for Complex Litigation* § 21.634 (internal citations omitted). Typically, a court's final approval of a class action settlement "involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters*, 582 F.3d 30, 44 (1st Cir. 2009). The following factors are relevant for a court evaluating whether to approve a Rule 23 settlement: "(1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; (6) prospects of the case, including risk, complexity, expense and duration." *Scovil v. FedEx Ground*

*Package Sys., Inc.*, No. 1:10-cv-515-DBH, 2014 WL 1057079, at *2 (D. Me. Mar. 14, 2014).

### 2.    FLSA

With respect to settlement of FLSA claims, either court approval or supervision by the United States Secretary of Labor is required for employees' waiver of their rights through settlement to be binding. *Prescott v. Prudential Ins. Co.*, No. 2:09-cv-00322-DBH, 2011 WL 6662288, at *1 (D. Me. Dec. 20, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)). A court may approve a FLSA settlement if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," *Lynn's Food Stores*, 679 F.2d at 1355, and at least one named plaintiff is willing to sign the agreement. *Scovil*, 2014 WL 1057079, at *1. The factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of a collective action settlement of FLSA claims. *See, e.g.*, *Scovil*, 2014 WL 1057079, at *8.

### B.    Application

At this pre-fairness hearing stage, the Plaintiffs have demonstrated that the Spiff Claim and the ASM Claim settlement agreements both "fall within the range of possible final approval." *Trombley*, 2011 WL 3740488, at *4. It therefore makes sense at this time to provide notice of the proposed settlements to the potential class and collective members. At the fairness hearing, the Court will specifically probe the parties on each of the *Scovil* factors and finally determine whether the "settlement is fair, reasonable and adequate (the class action standard)" and whether "it is a fair and reasonable resolution of a bona fide dispute over FLSA provisions (the collective

19

action standard)." *Scovil*, 2014 WL 1057079, at *1 (internal quotation and citation omitted).

### a. Spiff Claims

The total settlement funds allotted to class/collective members on the Spiff Claims is $35,000. This amount reflects the employees' total actual wage loss ($21,110.39), plus some amount of liquidated damages. Employees in Maine, New Hampshire, and Vermont all receive at least 131% of their actual lost wages. *See* Spiff Allocation Sheet. The Court understands that the liquidated damage portion arose from the parties' settlement negotiations and reflects uncertainty as to whether the employees would ultimately prevail on a liquidated damage award at trial.[9] Employees in Massachusetts receive at least 197% of their actual lost wages. *See* Spiff Allocation Sheet. This higher percentage accounts for the availability of treble, as opposed to liquidated (double), damages under Massachusetts law. *See* M.G.L. 151 § 1B; Supplemental Mem. in Supp. of Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 2 (ECF No. 82). The parties further determined that each employee should receive a minimum of $25 in the settlement, even if their lost wages were minimal. *See* Spiff Allocation Sheet.

---

[9]     Courts applying the FLSA may decline to award liquidated damages if the employer makes out a "good faith" defense. *See* 29 U.S.C. § 260. At the fairness hearing, the Court will question the parties on the strengths and weaknesses of the Defendant's "good faith" defense. The Court will further inquire as to whether liquidated damage awards are mandatory or discretionary under the applicable state laws.

The proposed settlement falls within a range of possible final approval under both Rule 23 and the FLSA.[10] However, the Court will apply heightened scrutiny at the fairness hearing, given that the settlement agreement: (1) provides for $50,000 in attorneys' fees (which is well over the $35,000 that the entire Spiff Claim class/collective members receive overall)[11]; (2) states that the "Defendant does not object to such requests (for attorneys' fees)"[12]; and (3) arrives at the same time as an unopposed motion for class certification.[13]

### b.    ASM Claims

The Defendant has agreed to pay $175,000 in connection with the ASM settlement. Proposed class counsel has indicated that they will petition the Court for

---

[10]    The parties indicated at a December 12, 2014 Conference of Counsel that "double recoveries" are not available because the FLSA and state law claims here cover the same lost income. A review of case law confirms this assertion. *See, e.g.*, *Bolduc v. Nat'l Semiconductor Corp.*, 35 F.Supp.2d 106, 117 (D. Me. 1998); *Carroca v. All Star Enters. & Collision Ctr., Inc.*, No. 12-11202, 2013 WL 3496537, at *4 (D. Mass. July 10, 2013). The Court will, however, question the parties at the fairness hearing on the damages available under the FLSA versus state overtime laws, to ensure that each employee is receiving a fair settlement.

[11]    The First circuit recognizes two general methods for calculating attorneys' fees in the class action context: (1) the "percentage of fund" method; and (2) the "lodestar" method. Under the percentage of fund method, counsel is awarded a reasonable percentage of the common fund, typically in the 20-30% range. Under the lodestar method, courts evaluate the time spent on the matter, hourly rates for attorneys, and any multipliers or discounts for special circumstances. The touchstone of either method is reasonableness. *See Bezdek v. Vibram USA Inc.*, Nos. 12-10513, 13-10764, 2015 WL 223786, at *19 (D. Mass. Jan. 16, 2015). The Court would not approve the attorneys' fees contemplated in the Spiff Claim settlement agreement through the percentage of fund method. Accordingly, any motion for attorneys' fees with respect to the Spiff Claims should be made using the lodestar method with appropriate accompanying documentation.

[12]    Am. Spiff Class/Collective Action Settlement Agreement & Release 7. An agreement from a defendant not to oppose plaintiffs' counsel's application for attorneys' fees—called a "clear sailing provision"—calls for the Court to apply heightened scrutiny to the settlement agreement. *See Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991).

[13]    *See Trombley v. Bank of Am. Corp.*, No. 08-cv-456, 2012 WL 1599041, at *3 (D.R.I. May 4, 2012) ("When a settlement is reached before the class is certified, the settlement agreement is subject to heightened scrutiny for fairness.").

$58,333 in attorneys' fees and $6,236.32 in costs from the total settlement amount. The parties also request a service payment of $500 for each class member who sat for a deposition. The $110,430 remaining after these proposed deductions would be distributed to class/collective members on a pro rata basis according to the number of weeks worked.[14] Each employee will receive the equivalent of approximately two extra hours of pay ($23.65) per week worked,[15] though each employee will receive at least $100 regardless of the number of weeks worked. The parties arrived at this settlement amount and distribution model after "informal and formal discovery" and months-long negotiations. Second Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 12. On this record, the Court does not perceive any obviously fatal defects to the ASM settlement under either the Rule 23 or FLSA standards. However, as with the Spiff Claim settlement agreement, the

---

[14] The parties identified qualifying assistant store managers as follows. First, they singled out all assistant store managers who ran an end-of-day report during (1) the FLSA three-year statutory period for willful violations (for opt-in collective action members) and (2) the Maine state law six-year statutory period (for opt-out class members). Then, they summarized this data on a weekly basis by identifying all weeks in which each assistant store manager ran at least one end-of-day report. This process resulted in a list showing the total number of eligible weeks each assistant store manager ran at least one end-of-day report. Supplemental Mem. in Supp. of Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 3. This method does not appear to account for ASMs who worked through lunch, but did not run an end-of-day report. The Court will inquire at the fairness hearing as to how the parties' method fairly accounts for uncompensated lunch break work.

[15] The Plaintiffs explain that the parties "performed extensive calculations to determine the amount of time potentially spent performing 'end of day' tasks after clock out time. The amount of travel time required to perform bank deposits was calculated for each location and included in this analysis. Based on these calculations, a total potential damages number was determined and a settlement value identified based on litigation risks." Supplemental Mem. in Supp. of Unopposed Mot. for Class/Collective Certification & Prelim. Approval of Settlement Agreement 3-4. In accordance with the first *Scovil* factor, the Court will probe the parties further on the ASM Claims settlement. For example, did end-of-day report runners also drive to the bank? Does the two hour figure reflect an average travel time? Was any time added for working through lunch? Was there any accounting for liquidated damages available under the FLSA or Maine law on top of wages owed?

Court will engage in heightened scrutiny of the ASM Claim settlement agreement, given the Plaintiffs' impending motion for 33% of the common fund in attorneys' fees,[16] what appears to be a clear sailing provision in the settlement agreement,[17] and agreement to settle prior to class certification.

### C. Settlement Notices

The Court has reviewed the Revised Notice of Settlement-Spiff Claims and the Revised Notice of Settlement-ASM Claims and finds that they are "reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Nilsen v. York Cnty.*, 382 F.Supp.2d 206, 210 (D. Me. 2005). Accordingly, the notices satisfy Rule 23(e) and due process requirements. *Id.* The notices are also appropriate under the FLSA because they communicate accurate information about the suit in order to enable potential collective action members to "make informed decisions about whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).[18]

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiffs' motion for class certification of the Maine Spiff Class, Massachusetts Spiff Class, New Hampshire Spiff Class, Vermont Spiff Class, and Maine ASM Class; **GRANTS** the

---

[16]     ASM Class/Collective Action Settlement Agreement & Release 6-7.

[17]     ASM Class/Collective Action Settlement Agreement & Release 7.

[18]     Pursuant to the Court's request, the parties have filed revised notices of settlement, which inform employees of the time frame covered by each class and collective action. *See* Revised Notice of Settlement-Spiff Claims 5; Revised Notice of Settlement-ASM Claims 5.

Plaintiffs' motion for conditional certification of the FLSA Spiff Collective; **AUTHORIZES** the Plaintiffs to circulate Revised Notices of Settlement (ECF Nos. 84, 84-1), as described in the Amended Settlement Agreements (ECF Nos. 78-2, 78-5); and **GRANTS** the Plaintiffs' request to appoint Nichols Kaster, PLLP and Donald Fontaine as class counsel and settlement administrator.

The Court also **GRANTS** the Plaintiffs' unopposed motion for leave to file their legal services agreement with Plaintiff Michaud under seal (ECF No. 81).

The Clerk's Office will schedule a final fairness hearing within the next 60 days in accordance with this Order.

SO ORDERED.

                                        /s/ Nancy Torresen
                                        United States Chief District Judge

Dated this 17th day of March, 2015.